Leslie E. Buerger v. Commissioner.
Buerger v. Commissioner
Docket No. 9619.
United States Tax Court
1953 Tax Ct. Memo LEXIS 68; 12 T.C.M. (CCH) 1278; T.C.M. (RIA) 53354; November 6, 1953
*68 John E. Adams, Esq., Grove Hill, Ala., and Vincent F. Kilborn, Esq., for the petitioner. Robert B. Wallace, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion The respondent determined deficiencies in the income tax of petitioner in the amounts of $8,634.08 for the year 1940 and $37,266.35 for the year 1941. The sole question is whether the respondent erred in determining that there was no valid partnership between petitioner and his wife during the taxable years and that the entire net income from a business conducted under the name of the City Sales Company was includible in the taxable income of the petitioner. Findings of Fact Petitioner, a resident of Mobile, Alabama, filed his income tax returns for the taxable years with the collector of internal revenue for the district of Alabama. In the early part of 1921, petitioner was employed as a salesman by Cudahy Packing Company in Mobile, Alabama, at a salary of about $50 per week. He supplemented his income by selling products other than those of Cudahy. In 1921 Cudahy placed petitioner in an office job at the same salary that he was then receiving as an outside salesman. However, the *69 effect of change in duties was to cut off petitioner's supplementary earnings. He at that time had a wife and one child, then three years old. His wife, Edwina S. Buerger, was unemployed, and had not been employed since their marriage. In 1921, after his change in duties at Cudahy, the petitioner and his wife discussed the feasibility of his leaving Cudahy and establishing a business of his own. Petitioner told his wife that he could not take this step unless she would obtain employment and contribute her earnings for support of the family. His wife agreed "to go to work" and became an employee of the Peoples Bank in Mobile. In April 1921, the petitioner started a business known as Southern Brokerage Company. It had no assets other than a secondhand desk. On October 1, 1921, petitioner consolidated this business, which then had net worth of $585.25, with a wholesale butter and egg business owned by L. H. Scott, the net worth of which was $4,685.56. Petitioner formed a partnership with Scott, to carry on a general merchandise and brokerage business under the name of City Sales Company, and agreed to pay Scott $1,650 out of his share of profits, which was regarded by them as equalizing *70 their respective interests in the partnership. Petitioner's withdrawals, or salary, from this partnership were limited to $30 per week. On January 27, 1923, petitioner bought Scott's interest in the business for $5,000, payable $2,000 in cash, and the remainder in installments of $250 per month. Petitioner had no money and had difficulty in raising the required cash payment. At his wife's request, her mother endorsed petitioner's note for $2,000 at the Peoples Bank, thereby enabling petitioner to make this payment. His wife's mother, who was secretary to the President of the Peoples Bank, also personally guaranteed a line of credit of $10,000 at the bank for petitioner, and he utilized this entire line of credit in the business. She never paid or was called upon to pay any amount of money as a result of this guaranty. Throughout the entire period of the petitioner's operation as Southern Brokerage Company, his partnership with Scott, and for several months after his purchase of Scott's interest, petitioner's wife continued to work in the Peoples Bank for $100 per month and used this compensation for family maintenance. Her employment at the bank ceased in May, 1923, and she gave *71 birth to a son in September, 1923. During the years 1923 to 1940 the petitioner discussed with his wife the problem incident to the operation of the business, such as financing, major sales campaigns, and employment of salesmen and office help. He kept her acquainted with the progress of the business and its financial condition and showed her the annual audits. It was their understanding from the inception of the business that she had an interest in it. On June 22, 1940, the petitioner executed the following instrument: "STATE OF ALABAMACOUNTY OF MOBILE) "FOR AND IN CONSIDERATION of the love and affection which I, Leslie E. Buerger, bear for my wife, Edwina S. Buerger, I do hereby give unto her an undivided one-half interest in and to all of the assets and property of every kind and description of the business now owned and operated by me under the name of City Sales Company, including stock of merchandise, accounts receivable, notes, mortgages, motor vehicles, and all and every property and asset of any description. "IN WITNESS WHEREOF, I have set my hand this 22nd day of June, 1940. "(Signed) Leslie E. Buerger "WITNESS: (Signed) Marian R. Vickers" On the same day *72 the following partnership agreement was entered into between petitioner and his wife: "STATE OF ALABAMACOUNTY OF MOBILE) "THIS AGREEMENT entered into this the 22nd day of June, 1940, by and between Leslie E. Buerger, hereinafter called the party of the first part, and Edwina S. Buerger, hereinafter called the party of the second part, witnesseth as follows: "ONE "That the said parties hereto have formed a co-partnership for the purpose of carrying on the following business towit: To buy, sell, trade, and deal in at wholesale and retail groceries, provisions, food, supplies, wares, vegetables, produce, and all other articles and things incidental to a general grocery and provision mercantile business. And for the faithful performance of the terms of this agreement, the parties hereto bind and engage themselves each to the other and their executors and administrators. "TWO "The firm name and style of said co-partnership shall be City Sales Company, and shall continue until dissolved by the death of either party, or by mutual agreement. "THREE "Each party to this agreement shall contribute fifty (50%) of the capital of said partnership. "FOUR "All profits which *73 may accrue to said partnership shall be divided and all losses happening to said firm, whether from bad debts, depreciation of goods, or other causes, and all expenses of the business shall be borne by the said partners in the proportion of their capital invested in said co-partnership. "FIVE "Leslie E. Buerger shall devote and give all of his time and attention to the business of said firm, and shall act as General Manager thereof with full right and power to manage and control the operation of the co-partnership. "SIX "All of the purchases, sales, transactions and accounts of said firm shall be acurately kept in regular books which shall be always open to the inspection of each party and their legal representatives respectively; and an account shall be stated and settled between the said parties annually. "SEVEN "The partnership name is to be used only in respect of the affairs and business of the firm, and neither of said parties shall subscribe any bond, sign or endorse any promissory note, accept, sign or endorse any draft or bill of exchange, or assume any other liability, verbal or written, either in his own name or in the name of the firm for the accommodation of *74 any other person or persons whatsoever, without the consent in writing of the other party; nor shall any party lend any of the funds of the co-partnership without such consent of the other party. Nothing contained in this paragraph however shall prevent the said partnership from borrowing money for the purpose of carrying on its general business. "EIGHT "Neither party shall withdraw from the funds or joint stock more than is his or her share of the profits then earned, nor shall either party be entitled to interest on his or her share of the capital; but if at the expiration of the year a balance of the profits be found due to either party, he or she shall be at liberty to withdraw the said balance. "NINE "Either party hereto may terminate this agreement at will. "IN WITNESS WHEREOF, We, The said Leslie E. Buerger and Edwina S. Buerger, have set our hands and seals this the 22nd day of June, 1940. "Signed: Edwina S. Buerger (Seal) Leslie E. Buerger (Seal)" On June 29, 1940, closing entries were made in the books of the business (normally made only at the end of the calendar year); profits for the six-months' period then ending were transferred to petitioner's capital *75 account; appropriate entries were made to reflect the formation of the partnership; a new capital account was opened in the name of the wife and there was transferred to her capital account exactly half of the amount in petitioner's capital account. Petitioner notified his bank, Dun & Bradstreet, and some of his principal creditors of the formation of the partnership. Petitioner filed a gift tax return and his wife a donee's return covering the gift, and petitioner paid a gift tax of $1,574.27. Capital is a significant income-producing factor in the business of the City Sales Company. During the years 1940 and 1941 the inventories of the business constantly increased and the business was profitable. The financial statements of the City Sales Company show notes payable to bank on June 30, 1940, of $25,000; on December 31, 1940 of $85,000; and on December 31, 1941 of $140,000. They also show cash on June 30, 1940 of $1,916.90; on December 31, 1940 of $14,960.17; and on December 31, 1941 of $14,968.33. No charges were made to the capital account of petitioner's wife during the period June 30, 1940 to December 31, 1940. The following charges were made to that account during the *76 years 1941 to 1950 inclusive: Payment of
Purchase
Fededal and
Purchase
of
State
of
Year
stocks
income taxes
Bonds
Misceilaneous
Cash
1941
$29,288.26
$ 5,436.46 [1]
1942
$11,777.41
28,673.01
$ 375.00
3,855.50
1943
4,393.16
14,011.83
1,410.24
1944
7,133.46
51,250.00
1,500.00
$20,000.00
1945
1,925.82
20.00
17,493.97
1946
6,201.78
1,250.00
1947
6,192.56
20.00
2,500.00
1948
10,001.75
20.00
2,500.00
1949
7,227.06
20.00
3,800.00
1950
7,925.43
85.41
7,500.00
In addition to the foregoing withdrawals, petitioner's wife withdrew $2,000 in 1944 for the purchase of real estate and an aggregate amount of $59,026.71 which she transferred to her children by way of gift during the years 1941, 1942, 1943 and 1947. In some of *77 the above-mentioned years petitioner's withdrawals exceeded those of his wife, while in other years her withdrawals exceeded his. At the end of 1950, petitioner had $76,626.55 in his capital account while his wife had $88,170.07. At the time of the formation of the partnership, petitioner and his wife agreed that petitioner should draw a salary of $100 per week for his services as manager. Petitioner did not withdraw this salary during the period June 30, 1940 to December 31, 1940, but did withdraw $100 per week as salary during the year 1941 and in subsequent years. On July 19, 1940, shortly after the execution of the partnership agreement, petitioner and his wife executed reciprocal wills, devising and bequeathing to each other all their properties in the event of death. The City Sales Company filed partnership income tax returns for the period July 1, 1940 to December 31, 1940, and for the year 1941, showing an equal division of net income between petitioner and his wife. The respondent determined that the entire net income of the company as reported in these returns was taxable to petitioner. Petitioner filed individual income tax returns for the years 1940 and 1941, reporting *78 all the income from the business for the first half of 1940, and his proportionate part of the partnership profits for the last half of 1940 and all of 1941. He paid the taxes shown to be due on these returns. Petitioner's wife filed individual income tax returns for the years 1940 and 1941, reporting her proportionate part of the profits of the partnership for each year, and paid the tax shown to be due on these returns. On December 31, 1941, petitioner and his wife each undertook to give to their daughter, Cleo P. Buerger, an undivided one-sixth interest in the business and undertook to admit her as a partner. The petitioner and his wife, in good faith and acting with a business purpose, intended to join together in the conduct of the business of the City Sales Company as partners from and after July 1, 1940, and they did carry on this business as partners during the period July 1, 1940 to December 31, 1940, and during the year 1941. Opinion RAUM, Judge: The question is basically one of fact, and this is a borderline case. After considering all the evidence, particularly the wife's undertaking to support the family while petitioner established the business together with *79 the concurrent understanding that she was to have an interest in the business, we have found that petitioner and his wife, in good faith and acting with a business purpose, intended to join together in the conduct of the business of the City Sales Company as partners from and after July 1, 1940, and that they did carry on this business as partners during the period July 1, 1940 to December 31, 1940, and during the year 1941. Cf . Decision will be entered under Rule 50. Footnotes
1. This amount represented the combined withdrawals of petitioner and his wife; the entire amount was inadvertently charged to her account. During the taxable years all checks drawn on the account of the City Sales Company at the Merchants National Bank were signed by the petitioner and the signature card of the account at the bank bore his name only.↩